[Cite as *In re Estate of Davis*, 2025-Ohio-148.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| In the matter of the Estate of Patricia A. Davis, | : | |
| | : | |
| [Michelle Simpson, | : | No. 24AP-227 |
| | | (Prob. No. 603738) |
| Appellant]. | : | |
| | : | (REGULAR CALENDAR) |
| | : | |

D E C I S I O N

Rendered on January 21, 2025

**On brief:** *Michelle Simpson*, pro se. **Argued:** *Michelle Simpson.*

APPEAL from the Franklin County Court of Common Pleas,
Probate Division

BEATTY BLUNT, J.

{¶ 1} Michelle Simpson, successor executor of the estate of Patricia A. Davis, appeals the March 5, 2024 decision of the Franklin County Court of Common Pleas, Probate Division, which overruled her objections and adopted the July 21, 2023 magistrate's decision in this case. The court rejected her representation that the estate was insolvent, declined to approve her application for a Certificate of Transfer for the residence of Patricia A. Davis on Linfield Place, Columbus Ohio, and ordered Michelle Simpson to initiate a land sale proceeding of that residence to pay the debts of the estate.

{¶ 2} Patricia A. Davis ("Patricia") died testate on July 17, 2019. She was survived by her husband Merridith Davis ("Merridith") and her adult daughters, appellant Michelle Simpson ("Simpson") and Michelle's sister Renee. Among other provisions, her will contained the following devise:

> I hereby give devise and bequeath my real estate located at and known as 179 Linfield Place, Columbus, Ohio, to my husband, Merridith Davis, of Columbus in trust for the benefit of my

> children, Michelle Simpson and Renee Simpson. Said trustee is to serve without bond and is to have full authority to sell, mortgage, encumber, invest or trade any of said property for the benefit of my said beneficiaries and to use the principal or interest of said property at his discretion for [said] beneficiaries.
>
> In the event my husband predeceases me or fails to survive me by thirty (30) days, I hereby give, devise and bequeath all of my estate and property not specifically devised or bequeathed of which I shall die seized and possessed and all property to which I shall be otherwise entitled at the time of my decease, wheresoever situated, be it real, personal, or mixed, to my children equally.

(Apr. 16, 2020 Last Will and Testament (Item Four) at 1-2.) At the time of her death, Patricia was the sole titled owner of 179 Linfield Place. Therefore, the corpus of purported trust is composed solely of the Linfield Place residence.

{¶ 3} On April 16, 2020, Merridith was appointed executor of Patricia's estate. But no application for appointment of testamentary trustee was ever filed with the probate court, and the court has never appointed a trustee. The inventory filed by Merridith valued the home at $52,000 and listed $2,000 of household goods and furnishings as other assets of the estate. Simpson does not dispute that the debts of the estate exceed $2,000.

{¶ 4} In early 2021, Merridith elected to take against Patricia's will, and on February 1, 2021 filed an application to be awarded the $40,000 family allowance pursuant to R.C. 2106.13(A) ("If a person dies leaving a surviving spouse and no minor children * * * the surviving spouse * * * shall be entitled to receive * * * the sum of forty thousand dollars as an allowance for support."). The court filed an entry approving the application on that same date. On April 20, 2021, Simpson filed a motion to set aside Merridith's election against the will, but the probate court magistrate subsequently dismissed that motion, and Simpson did not file an objection to that decision.

{¶ 5} Merridith died on July 9, 2021, and Simpson was subsequently appointed as successor executor. Notwithstanding, Merridith's right to the family allowance had already vested, and had become an asset of his own estate. *See, e.g.*, *In re Estate of Wreede*, 106 Ohio App. 324, 327 (3d. Dist.1958), citing *In re Estate of Croke*, 155 Ohio St. 434, 441-42 (1951) (observing that the right to the family allowance "vests immediately upon [the decedent spouse's] death, becomes a preferred and secured debt of [the surviving spouse's]

estate, and, when it has not been paid to the [surviving spouse] during her lifetime, such allowance or any unpaid balance thereof normally survives as an asset of her estate"). The share of the decedent's estate due to the spousal election was similarly vested and had become an asset of Merridith's estate.

{¶ 6} Simpson subsequently applied for a Certificate of Transfer of 179 Linfield Place, which represented that the "[d]ecedent's known debts are paid or secured to be paid." (Ex. A, Application for Certificate of Transfer at 1 attached to Dec. 14, 2022 Mag.'s Order.) Simpson's application for Certificate of Transfer was seemingly based on her belief that because it had been named as the asset of the testamentary trust, the home could be distributed prior to any other distributions and prior to the payment of estate debts. But the magistrate denied the application in an entry filed December 14, 2022, observing:

> According to the Inventory filed in this case, the only assets of the estate are a parcel of real property located at 179 Linfield Place, Columbus, Ohio and household goods and furniture. In order to close the estate, the Executor must transfer these assets to the proper beneficiaries.
>
> * * *
>
> A surviving spouse who elects to receive the allowance for support is entitled to the first $40,000 of the probate assets. See R. C. 2106.13. A surviving spouse who elects against a decedent's Will is entitled to one-third of the decedent's estate when two or more of the decedent's children survive. See R. C. 2106.01(C). Since Mr. Davis made both elections before he died, he is both a creditor and a beneficiary of the decedent's estate. The court cannot issue a Certificate of Transfer concerning the decedent's real property until his claims are resolved. For these reasons, the Application for Certificate of Transfer and proposed Certificate of Transfer submitted by Michele [sic] Simpson on December 7, 2022 are **DENIED**.

(Emphasis sic.) (Dec. 14, 2022 Mag.'s Order at 1, 3.)

{¶ 7} On December 20, 2022, Simpson filed a Motion to Set Aside the Magistrate's Order, and on February 6, 2023, she filed a pro se pleading styled as a "motion" arguing in support of setting aside the order, which contended that both the election against the will and the application for the support allowance were not timely filed. On April 6, 2023, the Probate Court denied Simpson's Motion to Set Aside:

On December 24, 2020, the court issued an order extending the time for [Merridith] Davis to exercise his right to elect to take under or against the decedent's will pursuant to R.C. 2106.01 until three months after the final disposition of the will construction action or April 30, 2021, whichever was later. Mr. Davis filed his election against the will on January 28, 2021, while the will construction action was pending. Although Michelle Simpson moved to set aside the election, her motion was denied. Mr. Davis additionally applied to receive the decedent's entire statutory family allowance in cash, which the court permitted so long as the estate were solvent.

Mr. Davis died on July 9, 2021. Michelle Simpson, represented by Christopher Signil, was subsequently appointed as executor.

In September of 2022, Ms. Simpson personally attempted to file an Application for Certificate of Transfer for the decedent's real property, the primary asset of the estate, which was devised to the decedent's daughters in trust, directly to herself and her sister. On September 27, 2022, the court returned the Application for Certificate of Transfer and proposed Certificate of Transfer to Mr. Signil because the proposed distribution did not take into account the fact the decedent's surviving spouse had elected against the will.

On October 20, 2022, Mr. Signil moved to withdraw as counsel for Ms. Simpson, citing Ms. Simpson's attempt to transfer the real estate without notifying him. A hearing on the motion to withdraw was held on December 7, 2022, after which Michelle Simpson forwarded another proposed Application for Certificate of Transfer and proposed Certificate of Transfer to the court.

On December 14, 2020, a magistrate of this court issued an order which approved Mr. Signil's withdrawal and denied the application for certificate of transfer. Michelle Simpson has now moved to set that order aside.

* * *

Accordingly, upon thorough Independent review and consideration, the court hereby **DENIES** the February 6, 2023 motion to set aside. The magistrate's decision issued December 14, 2022 is hereby **APPROVED** and **ADOPTED** in its entirety.

Finding no just reason for delay, this judgment entry shall constitute a final appealable order pursuant to Civ.R. 54(B).

(Emphasis sic.) (Apr. 6, 2023 Jgmt. Entry at 1-3.)

{¶ 8} Simpson did not appeal this decision. Rather, on May 17, 2023, Simpson filed a Representation of Insolvency with the probate court, asserting that the estate had no assets and had liabilities in the amount of $64,462.84. At least one creditor filed exceptions to this representation, and it was set for a hearing before the magistrate on June 14, 2023. On July 21, 2023, the magistrate issued a decision denying the Representation of Insolvency and ordering Simpson to "file a land sale action to sell 179 Linfield Place, Columbus, Ohio 43219 on or before September 22, 2023, or risk removal as executor." (Mag.'s Decision with Notice at 5.)

{¶ 9} But rather than initiating the mandated land sale action, on October 6, 2023, Simpson filed a Motion to Set aside Magistrate's Order to File a Land Sale Action to Sell 179 Linfield Place, Columbus, Ohio 43219. In her motion, she states her beliefs that the real property "is not an estate asset * * * [rather, i]t is an asset of the testamentary trust," that no application to be appointed testamentary trustee needed to be filed, as Patricia's will "named a testamentary trustee," and that because "the home was devised to a testamentary trust, per the will, it should not have been included in the inventory of the estate." *Id.* at 2. She also stated a "conclusion of law" that "it is astonishing that the Probate Court and two attorneys can acknowledge a testamentary trust and yet not honor it." *Id.* at 4. Although Simpson's pleading was styled as a motion and was untimely insofar as it objected to the magistrate's decision, the probate court treated her pleading as an objection and addressed it on the merits. The probate court concluded:

> Probate courts have the sole authority to appoint and remove testamentary trustees, direct and control their conduct, and settle their accounts. R.C. 2101.24(A)(1)(e). Accordingly, as testamentary trustees are only appointed upon a probate court's approval and as a trust is a relationship between a fiduciary and one or more beneficiaries, a testamentary trust cannot come in to being until a testamentary trustee is appointed by the probate court of jurisdiction. Ms. Simpson's argument that the testamentary trust was self-executing and came into being at the moment of Decedent's death is without merit.
>
> As the testamentary trust has not yet come into being, the home still belongs to Decedent's estate and is collectible by the

estate's creditors. Even if an application to be appointed testamentary trustee had been filed earlier, the resulting testamentary trust would still be an estate beneficiary, the home would remain an estate asset prior to distribution, and the home would be an asset subject to creditors. Accordingly, the representation of insolvency filed by Ms. Simpson that fails to list the home as an estate asset under the argument that it is property of the testamentary trust is without merit and was properly denied in the magistrate's decision.

(Mar. 5, 2024 Jgmt. Entry at 5.) The probate court ordered Simpson to initiate a land sale proceeding within 45 days of the date of the entry and scheduled a hearing for 50 days from the date of the entry for possible removal of Simpson as executor if she did not comply with the court's order. Instead, Simpson filed this appeal on April 1, 2024, and now asserts two assignments of error with the probate court's judgment:

FIRST ASSIGNMENT OF ERROR: The Probate court erred and abused its discretion in determining the trust asset is the estate's asset to be used to satisfy the estate's debts.

SECOND ASSIGNMENT OF ERROR: The Probate court erred and abused its discretion in refusing to approve the Certificate of Transfer.

{¶ 10} As an initial matter, we are not completely convinced these alleged errors are properly before us. Both seemingly address errors from the probate court's December 14, 2022 judgment, which Simpson did not appeal. Simpson appeals from the probate court's denial of her representation of insolvency, not the court's refusal to approve her proposed Certificate of Transfer. Notwithstanding, all of Simpson's complaints rest on a single legal claim—that 179 Linfield Place is not part of Patricia's probate estate, because it was instead part of her testamentary trust. Therefore, we will continue to address the merits of her appeal.

{¶ 11} Simpson's brief does not directly address the question, but the only issue presented for the court here is a straightforward question of law: is a testamentary trust self-executing, created separate from and prior to any other devises in a will, and created separate from and prior to the payment of any debts of the estate? If the answer to this question is "no," then both of her assignments of error lack merit, and the probate court did

not err either by rejecting her proposed Certificate of Transfer or by rejecting her representation that the estate was insolvent.

{¶ 12} And we have no difficulty concluding that Simpson's understanding of the law is simply incorrect. One cannot avoid payment of debts by just placing assets in a testamentary trust. If debt avoidance were that simple, it would be universal, and the probate courts would handle nothing but insolvency proceedings and wiping out debts. The instrument conventionally used to shield assets in this fashion is an inter vivos trust rather than a testamentary trust. Such a trust comes into being at during the lifetime of the grantor, when the trustee accepts the corpus of the trust from the grantor. But here, Patricia did not convey her house to an inter vivos trust in the care of a named trustee during her lifetime. There are, in fact, a number of possible ways that Patricia could have transferred the house to her daughters outside of her probate estate, the simplest being an affidavit to transfer on death. *See* R.C. 5302.22(C)(1).

{¶ 13} But that is not how a testamentary trust functions. The crucial questions, to determine whether the putative corpus of a trust is part of the decedent's estate, are when the trust was created and when the transfer of the property into the trust occurs. "An inter vivos trust is one created during one's lifetime and hence it must be in existence at the time of the settlor's demise. A testamentary trust is created by a will and therefore it comes into existence after the settlor's death." *Hageman v. Cleveland Trust Co.*, 8th Dist. No. 33,060, 1974 Ohio App. LEXIS 2925, *3-4 (Nov. 29, 1974). *See also* R.C. 5804.01(A) ("A trust may be created by . . . [t]ransfer of property to another person as trustee during the settlor's lifetime or by will or other disposition taking effect upon the settlor's death."). A testamentary trust can be established through a will, but it is a bequest in a will just like any other. *See* R.C. 2107.011(B) ("The term 'bequest,' in addition to its meaning at common law or under any other section or sections of the Revised Code, includes any testamentary disposition of real property and any testamentary disposition of a vendor's interest in a land installment contract.").

{¶ 14} In this case, the "transfer of property" to the testamentary trust never occurred, and therefore the testamentary trust never actually came into being. As the probate court correctly recognized, "trusts are relationships, not entities like a corporation * * * [and] trusts cannot hold title to property or assets; only *trustees* can hold title for the

benefit of another, pursuant to the terms of the trust." (Emphasis added.) (Mar. 5, 2024 Jgmt. Entry at 4.) It follows that trusts *cannot* be self-executing, because they require the acceptance of a trustee. Here the named trustee, Merridith Davis, never accepted his role and never sought appointment by the probate court, which has exclusive jurisdiction over such matters. R.C. 2101.24(A)(1)(e) ("Except as otherwise provided by law, the probate court has exclusive jurisdiction * * * [t]o appoint and remove guardians, conservators, and testamentary trustees, direct and control their conduct, and settle their accounts * * *."). Accordingly, the probate court was absolutely correct when it concluded:

> [A] testamentary trust cannot come in to being until a testamentary trustee is appointed by the probate court of jurisdiction . . . . As the testamentary trust has not yet come into being, the home still belongs to Decedent's estate and is collectible by the estate's creditors. *Even if an application to be appointed testamentary trustee had been filed earlier, the resulting testamentary trust would still be an estate beneficiary, the home would remain an estate asset prior to distribution, and the home would be an asset subject to creditors.*

(Emphasis added.) (Mar. 5, 2024 Jgmt. Entry at 5.)

{¶ 15} For these reasons, the magistrate and probate court were correct in ordering Simpson to initiate a land sale proceeding, as the other assets in the estate were insufficient to pay the estate's debts. *See* R.C. 2127.02. The probate court did not err by concluding that Patricia's residence was an asset of her estate, by refusing to issue a Certificate of Transfer, or by rejecting the Representation of Insolvency. Accordingly, Simpson's two assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas, Probate Division is affirmed.

*Judgment affirmed.*

MENTEL and BOGGS, JJ., concur.

———————————